### GUARDIANSHIP OF LAURA DANNEKER, A MINOR.

[No. 4,344; decided March 29, 1887.]

Guardianship—Custody and Welfare of Child.—In appointing a guardian and awarding the custody of a child, the court is bound to do what in its judgment appears to be for the best interest of the child in respect to its temporal, its mental and moral welfare.

Guardianship.—The Affection of a Child for the Person seeking its custody as guardian is always given consideration by the court.

Guardianship—Social and Private Life of Guardian.—It is the duty of the court to inquire into the social relations and private life of a person seeking to be appointed guardian of a child, so far as they may affect the child's welfare.

Evidence—Inference from Failure to Produce.—The failure of a party to produce evidence within his power to produce is a circumstance to be taken against him.

Record.—Matters Prejudicial to the Character of any person will be excluded from the record when not essential to a proper decision.

Henry Vrooman and W. H. Jordan, for the motion.

A. H. Loughborough, contra.

COFFEY, J. This is a motion for a new trial in the matter of Laura Danneker, a minor, wherein, upon the petition of one Teresa Magee, letters were granted to her as guardian of the person of the said minor. Upon the hearing of that petition Jacob Michaelson appeared and opposed the issue of such letters, but the court, upon the conclusion of the testimony, granted the prayer of the petitioner, Teresa Magee. The court is now asked to grant the motion of the respondent to set aside the decision, the findings and the judgment therein, and for a new trial. This motion has

been prosecuted with great earnestness and evident conviction on the part of counsel that the court erred in its original conclusion, and counsel, Mr. Jordan, in presenting his argument, said that such was the gravity of the case to the respondent and to the ward, and so deep the interest felt in its final determination, that he invoked the exercise of some patience on the part of the court in reviewing the evidence in extenso produced at the trial, and in presenting fairly and logically the reasons which, in his judgment, actuated the respondent in making the motion. The counsel arguing the motion for new trial were not the counsel engaged at the time of the hearing of the application, and on that account, as well as out of consideration for their request, I gave them more than the usual time to prepare their statement on motion for new trial and argument; and, notwithstanding the pressure of other matters before the court, have bestowed great care upon the re-examination of the evidence and the written argument of the counsel. In this connection, I may say that this is the uniform habit of this court in all cases of this class. The court endeavors to try these cases with strict reference to the interest of the child. In awarding the custody of a minor, or in appointing a guardian, the court is bound to do what, in its judgment, appears to be for the best interest of the child in respect to its temporal, its mental and moral welfare.

The counsel, at the argument, dwelt with great emphasis upon expressions found in the oral opinion of the court, which he construed favorably to the respondent, and which he says may be presumed to reflect the impressions made upon the mind of the court by the evidence touching the character and fitness of the respondent. Such remarks were inspired by the reluctance of the court to fasten upon the record matter prejudicial to the character of any person, when such matter seems to be not essential to the conclusion. The court does not wish, unnecessarily, to affix a stigma to the character of any person, and would rather suffer injustice itself than perpetrate it, and it was with this view that the court, at the original hearing (when the counsel now appearing for respondent was not present, and had not the op-

portunity of observing all that occurred in court), made a statement which it will now repeat, which statement was predicated upon some injurious publications with regard to the case which were in their nature sensational and outside of the record, and calculated to obstruct the current of justice. The court then said in a kindly manner, as it supposed, that with reference to the respondent the court was not willing that he should be prejudiced by any statement not in the record.

Some statements obtained admission to the newspapers pending the trial of the case, which the court regretted to see, and remarked: "I have no control over newspapers in any way, and, consequently, I cannot control their publications. . I do not wish anybody that comes into this courtroom to be prejudiced by circumstances or testimony of any kind that is not relevant to the issue. One of the statements that appeared in one of the papers was that Mr. Michaelson is a gambler. There is not any evidence to support that. It was the statement that was alleged to have been made by the son of the lady who kept the school in Oakland, which was denied by her." The same care which the court exercised in purifying the record from any unnecessary reflection upon the character of the respondent, it tried to maintain in other respects in commenting upon the evidence that was before the court; and, believing it had sufficient ground upon which to found its judgment without reflecting upon the personal character of the respondent, it excluded from view, as far as possible, allusion to anything that may have been testified to or suggested by the evidence derogatory to his reputation with respect to his relations to the opposite sex, or as to the character of some of that sex with whom this child may have been, or was liable to be, brought into contact.

As the result of my re-examination of the evidence and consideration of the argument of the counsel, and of the imputed errors of the court committed during the trial and in the decision, I am constrained to say that I discover no reason why I should change my original conclusion. I may repeat, that, while I have had a great deal of sympathy for the respondent in this case on account of the affection which

the child has shown for him, and the emotion exhibited by the respondent, which state of the mind of the child is always considered by the court in deciding these cases, I cannot see wherein he has established any right to the legal custody of the minor, and that I think that that custody should be in the hands of those from whom it was taken at the time Mrs. Trendal received it. In my opinion, the evidence shows that the minor, Laura Danneker, was at the time of the application a resident of the city and county of San Francisco; that it was and is expedient, and was and is for the interest of the said minor, that a guardian of her person be appointed; that the petitioner, Teresa Magee, was and is a suitable and competent person to be appointed such guardian. The residence of the child was the residence it had at the time it was given to the Sisters, and at the time it was placed in charge of Mrs. Trendal. The obligation which Mrs. Trendal contracted when she received the child from the Sisters was violated when she gave that child to the respondent. Of that fact I can have no doubt. In order to understand this case fully, the whole of the evidence must be considered, and I am of opinion that, taken altogether, the evidence justifies the conclusion of the court.

One point I desire to allude to as considerately as possible, and that is the social relations of respondent during the time that the child was in his custody. The child was received by him without the knowledge, consent or connivance of the Sisters, and in violation of the agreement between them and Mrs. Trendal. At the time the respondent received the child he was not a married man, and his social relations, as the evidence discloses, were not such as are ordained by the sanction of the law. Pending the trial, however, he became a married man. To repeat the language of my former opinion: ''Have the changed relations of the respondent altered the law or the duty of the court?'' It is no business of the court, so far as he is personally concerned, to deal with his relations to society prior to that time; but it is part of the duty of the court to consider his social relations as they may have affected the child's welfare, and while upon him, as he stands isolated from his child, the court is not called upon

to pronounce judgment, it has a right, in awarding the custody of a child, to inquire into his private life. The child was at the time of the application nine years of age. She was brought into contact, into association, with persons whose habits of life, as developed by the evidence, were such as if not to contaminate her mind or morals, at least to not elevate them, and she certainly should not have been brought into such company. There was another circumstance here, one which necessarily impressed the court very strongly. That is the fact that Mrs. Wasserman, after process was served upon her, and after the testimony had shown that she had sustained some friendly relations with respondent, had absconded. She was a witness for the applicant, Teresa Magee, and summoned here in her behalf. So far as the court could see she left here after she was served with subpoena, and after she had some consultation with respondent. He saw her. It did not transpire what conversation he had with her, but he did see her. The law says that whenever it is in the power of a party to produce evidence, that is a circumstance which shall be taken against him whose fault it is that the evidence is not forthcoming. I could not ignore this fact, since the evidence which she might have given was of importance in this case. It was argued earnestly, and impressed me strongly at the time, that the fact that for so long a period the child was allowed to remain in the custody of the respondent, should be taken against the applicant, Teresa Magee. It was claimed that the Sisters lacked diligence in reclaiming the child. This was explained by the testimony on behalf of the applicant, that the Sisters did not discover where the child was, and that when they did make the discovery they took these proceedings and in good faith prosecuted them to a conclusion.

I have no time to analyze all the evidence, but I am satisfied that from the whole record the conclusion of the court in granting the application of Teresa Magee was correct, and that the motion for a new trial should be denied. If I have erred in this conclusion, as is argued by the counsel for the respondent, I trust he will have ample opportunity of making that error manifest in the appellate tribunal.

**In Appointing a Guardian,** the court is guided primarily by what appears to be for the best interests of the child, and may award its custody to a person other than the parent if its well-being demands such a course. The wishes of the child, when of sufficient age to form an intelligent preference, although not conclusive on the court, will always be given due consideration; and it is not necessary, in order for the child to enjoy this privilege, that it should have reached the age of fourteen: 2 Ross on Probate Law and Practice, 950-952, citing In re Lundberg, 143 Cal. 402, 77 Pac. 156; Estate of Dellow, 1 Cal. App. 529, 82 Pac. 558; Andrino v. Yates, 12 Idaho, 618, 87 Pac. 787; Russner v. McMillan, 37 Wash. 416, 79 Pac. 988; Willet v. Warren, 34 Wash. 647, 76 Pac. 273; Stapleton v. Poynter, 111 Ky. 264, 98 Am. St. Rep. 411, 62 S. W. 730, 53 L. R. A. 784.